UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS

No. 6:20-cv-00420

**Benny Tim McLemee, Jr.,**
*Plaintiff,*

v.

**Van Zandt County, Texas, et al.,**
*Defendants.*

## ORDER AND OPINION

For the reasons set forth below, defendants' motion to dismiss plaintiff's first amended complaint (Doc. 14) is granted.

### Background

This lawsuit against state officials and entities stems from a search warrant and an arrest warrant. A state district judge in Van Zandt County issued a search warrant for the home of plaintiff, Benny Tim McLemee. And a justice of the peace in Van Zandt County issued a warrant to arrest plaintiff. The search warrant was executed on July 19, 2019. The next day, the arrest warrant was executed.

Underlying both warrants was a single affidavit by defendant David Wheeler, an investigator in the Van Zandt County Sheriff's department. His affidavit alleged that plaintiff broke two Texas laws:

- Committing a gambling offense with the intent to establish, maintain, or participate in a combination or the profits of a combination in violation of § 71.02 of the Texas Penal Code.

- Knowingly acquiring, possessing, transferring, and transporting the proceeds of criminal activity in violation of § 34.02 of the Texas Penal Code.

Both charges arose from Wheeler's investigation into a game-room operation in Van Zandt County. According to the

affidavit, Wheeler learned of the game rooms in June 2018 and undertook a year-long investigation into the rooms. On at least seven different occasions, undercover agents entered the game rooms wearing recording devices and played various games inside. On the recording of each occasion, Wheeler described the location of the game room, the time and date of his observations, the identity of the player, and his or her winnings or losses. Wheeler's affidavit includes descriptions of the gaming-machine functionality that Wheeler alleged violated Texas state law. For example, the affidavit alleged: "the gambling device . . . in the video lands on a bonus round that provided 10 free spins which is illegal according to 47.01 of the Texas Penal Code."

Plaintiff McLemee was the Chief Compliance Officer for the company that provided the gaming machines. According to his complaint, he also worked as a consultant for the owners of the game rooms and met with Van Zandt County officials to "educate them on the operation of the game rooms . . . to help ensure that local law enforcement understood that the machines were not illegal[.]"

Wheeler's affidavit, however, describes McLemee as having deeper involvement with the game rooms—as a fixer. *See* Doc. 23 at 21 ("McLemee stated that he doesn't own the game rooms, but he takes care of problems for them[.]"). For instance, the affidavit describes at length plaintiff's involvement in investigating a robbery at the game rooms. *See id.* at 16-19. Wheeler's affidavit paints those activities as part of a larger criminal organization run by plaintiff. *See*, *e.g.*, *id.* at 21-22 (referring to plaintiff's speech as using "phrases that criminals use when referring to making money illegally").

Plaintiff alleges that, after he was searched and arrested pursuant to the warrants, he was cleared of all state charges. Plaintiff's amended complaint now brings state-law tort claims against Wheeler and other county law-enforcement officials in their individual capacities, as well as 42 U.S.C. § 1983

claims for Fourth Amendment violations by all defendants. The original complaint, however, alleged the state-law tort claims against not only the individual defendants but also against Van Zandt County.

Defendants now move to dismiss the amended complaint, arguing that the Texas Tort Claims Act's election-of-remedies provision bars plaintiff's state-law claims against the individual defendants. The motion further contends that plaintiff fails to state a claim under § 1983 and that, even if plaintiff states a legally cognizable claim, defendants are entitled to qualified immunity. Because plaintiff appeared to be stating a claim under *Franks v. Delaware*, 438 U.S. 154 (1978)—which holds that the Fourth Amendment prohibits affiants from intentionally or recklessly swearing to false or misleading information when seeking a warrant—the court directed plaintiff to file the affidavit that he challenges as false. Plaintiff did so. Consideration of the motion to dismiss is now proper.

## Discussion

In reviewing a Rule 12(b)(6) motion, the court accepts all well-pleaded facts in the complaint as true and views them in the light most favorable to the plaintiff. *Sonnier v. State Farm Mut. Auto. Ins. Co.*, 509 F.3d 673, 675 (5th Cir. 2007). To survive, the factual allegations in the complaint must, if true, create a right to relief that is more than speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In other words, the pleaded facts "must make relief plausible, not merely possible." *Mayfield v. Curry*, 976 F.3d 482, 486 (5th Cir. 2020).

Plaintiff brings claims under state tort law and § 1983. Because his state-law claims can be disposed of on procedural grounds, the court addresses those claims first before turning to plaintiff's federal claims.

**1.** Plaintiff's amended complaint alleges that the individual defendants' "acts and conduct constituted an assault and battery on Plaintiff's person and a false imprisonment without justification, provocation or excuse[.]" Doc. 9 ¶ 39.

The individual defendants argue that plaintiff's claims against them must be dismissed under the Texas Tort Claims Act because plaintiff originally sued the county and that choice is an irrevocable election to sue the governmental unit instead of the governmental employees. In response, plaintiff argues that the Act does not apply because he no longer asserts any state-law claims against the county.

The Texas Tort Claims Act "force[s] a plaintiff to decide at the outset whether an employee acted independently and is thus solely liable, or acted within the general scope of his or her employment such that the governmental unit is vicariously liable, thereby reducing the resources that the government and its employees must use in defending redundant litigation and alternative theories of recovery." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 253 S.W.3d 653, 657 (Tex. 2008). "By requiring a plaintiff to make an irrevocable election at the time suit is filed between suing the governmental unit under the Tort Claims Act or proceeding against the employee alone, section 101.106 narrows the issues for trial and reduces delay and duplicative litigation costs." *Id.*

In other words, a plaintiff's decision at the outset of who to sue is an irrevocable election and will bar suit or recovery against non-parties regarding the same subject matter. Tex. Civ. Prac. & Rem. Code § 101.106(a), (e). So "a plaintiff must proceed cautiously before filing suit and carefully consider whether to seek relief from the governmental unit or from the employee individually." *Garcia*, 253 S.W.3d at 657.

Applying that law here, the individual defendants are entitled to dismissal of plaintiff's state-law claims. The relevant pleading is plaintiff's original complaint. *See City of Webster v. Myers*, 360 S.W.3d 51, 58 (Tex. App. 2011). That pleading brought state-law tort claims against both the county and its employees. The Tort Claims Act is the only avenue for common-law recovery against the government. *See Garcia*, 253 S.W.3d at 659. So "all tort theories alleged against a

government unit, whether it is sued alone or together with its employees, are assumed to be under the Tort Claims Act." *Id.* (cleaned up).

Subsection 101.106(e) is triggered upon the filing of a motion to dismiss by the government. Tex. Civ. Prac. & Rem. Code § 101.106(e) ("If a suit is filed . . . against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit."). Here, the county filed a motion to dismiss plaintiff's state-law claims against the individual defendants listed in plaintiff's original complaint. *See* Doc. 8.

The individual defendants' right to dismissal of plaintiff's state-law claims against them perfected upon the county's first motion to dismiss (Doc. 8). *See Bustos*, 599 F.3d at 462 ("If the plaintiff sues both the governmental unit and any of its employees under the TTCA, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.") (cleaned up). Plaintiff later amended his complaint and dropped his state-law claims against the county. But that does not undo his election and deny the individual defendants their perfected right of dismissal. *See Villasan v. O'Rourke*, 166 S.W.3d 752, 758 (Tex. App. 2005) ("Subsequent amended pleadings by the plaintiff filed after the government's filing of its motion to dismiss the employee do not moot the right created by the filing of the motion under section 101.106."); *Univ. of Tex. Health Sci. Ctr. at Hous. v. Rios*, 542 S.W.3d 530, 537 (Tex. 2017) (same).

Plaintiff's argument that the individual defendants are not entitled to dismissal because they were acting outside the scope of their employment is unpersuasive. The point of the Tort Claims Act is to force the plaintiff to elect, at the outset of the suit, whether to charge individual government employees with acting outside the scope of their employment. By suing the county as well as the individuals, plaintiff made that election under state law. Nor was that election unreasonable. In

seeking a warrant, Wheeler and his supervisors would naturally seem to be acting within the scope of their employment as peace officers. *See Quinn v. Guerrero*, 863 F.3d 353, 361 n.2 (5th Cir. 2017) (on similar facts, granting to officers the benefits of the Act's election-of-remedies provision). Intentional torts as well as unintentional torts fall under this dismissal right. *See id.* at 362 (dismissing similar intentional tort claims under the Act's election of remedies provision). Plaintiff's state-law claims against the individual defendants are therefore ordered dismissed.

**2.** Defendants also move to dismiss plaintiff's federal claims brought under § 1983. Section 1983 provides a cause of action against an individual who, acting under the color of state law, deprives a person of a federally protected statutory or constitutional right. *Bass v. Parkwood Hosp.*, 180 F.3d 234, 241 (5th Cir. 1999). Here, plaintiff alleges that defendants violated his Fourth Amendment rights. Specifically, he alleges that Wheeler submitted to two county magistrates an affidavit that Wheeler knew contained false information and knew omitted exculpatory information. Plaintiff also argues that the remaining defendants are liable for Wheeler's conduct under various theories of secondary liability.

Defendants respond that the amended complaint fails to state a claim under § 1983. They also assert, with the exception of Van Zandt County, a qualified-immunity defense. *See Lynch v. Cannatella*, 810 F.2d 1363, 1371-72 (5th Cir. 1987) (holding that municipalities are not entitled to qualified immunity).

Because plaintiff's § 1983 claim against Wheeler underlies his claims against the remaining defendants, the court addresses that claim against Wheeler first.

*Claim against Officer Wheeler*

The Fourth Amendment secures the right to be free from search or seizure without probable cause. *See Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 208 (5th Cir. 2009). Where a

search or arrest occurs without probable cause, a plaintiff may sue the acting officer for violating the Fourth Amendment. *See Glenn v. City of Tyler*, 242 F.3d 307, 313-14 (5th Cir. 2001). But if the facts supporting a search or arrest are placed before an independent magistrate who finds probable cause, the intermediary's decision breaks the chain of causation, insulating an officer from Fourth Amendment liability. *See Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d 808, 813 (5th Cir. 2010).

That shield against liability is not absolute. "Since *Franks v. Delaware*, 438 U.S. 154 (1978), it has been clearly established that a defendant's Fourth Amendment rights are violated if (1) the affiant, in support of the warrant, includes a false statement knowingly and intentionally, or with reckless disregard for the truth and (2) the allegedly false statement is necessary to the finding of probable cause." *Winfrey v. Rogers*, 901 F.3d 483, 494 (5th Cir. 2018) (cleaned up). A knowing or reckless omission that results in a warrant being issued without probable cause may also give rise to liability under *Franks*. *See Melton*, 422 F.3d at 258 n.5. Recklessness, in turn, can be shown in two ways. First, an officer is reckless if he entertained serious doubts as to the truth of the statement. *See Winfrey*, 901 F.3d at 494. Second, recklessness may be inferred if an omitted fact is clearly critical to the finding of probable cause. *See United States v. Martin*, 615 F.2d 318, 329 (5th Cir. 1980).

Whether an affidavit supplied probable cause for a warrant is a question of law. *Kohler v. Englade*, 470 F.3d 1104, 1109 (5th Cir. 2006) (citation omitted). Where a false statement or omission is alleged, *Franks* requires courts "to consider the faulty affidavit as if those errors and omissions were removed." *Winfrey*, 901 F.3d at 494. The court then reviews the "corrected affidavit [to] determine whether probable cause for the issuance of a warrant survives the deleted false statements and material omission." *Id.* at 494-95.

Probable cause exists if an affidavit contains sufficient reliable information from which a magistrate could reasonably

conclude that the items sought in the warrant were probably at the location to be searched, *see United States v. Settegast*, 755 F.2d 1117, 1121 (5th Cir. 1985), or that the suspect had committed or was committing an offense, *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). Although the court makes an independent assessment of the affidavit's sufficiency, a magistrate's determination of probable cause is "entitled to great deference." *Settegast*, 755 F.2d at 1121.

The Fourth Amendment is not violated if "the claimed misstatements in the [] warrant affidavit were of only peripheral relevancy to the showing of probable cause." *Franks*, 438 U.S. at 163 (cleaned up). Rather, the claimed misstatement or omission must be "clearly critical" to the finding of probable cause. *Martin*, 615 F.2d at 329.

Here, plaintiff's most substantial allegation is that Wheeler failed to inform the magistrates that the suspect gaming machines had been cleared by the district attorney. Doc. 9 ¶ 17(E). The affidavit does inform the magistrates that plaintiff had contacted the district attorney and that the game rooms' owner alleged that the district attorney cleared the machines. *See* Doc. 23 at 5 ("[The game rooms' owner] advised . . . [that] District Attorney Chris Martin . . . said it was ok to open the Game Room for business."). But the affidavit suggests that the owner's understanding of the district attorney's opinion was wrong. *See id.* ("[The assistant district attorney] stated that she had firmly expressed her opinion that the operation of the Game Room was not legal under Texas law."). Wheeler thus informed the magistrate of the district attorney's supposed conclusion as represented by plaintiff.

In any event, even assuming an omission, the complaint does not sufficiently allege that it was reckless or knowing. At best, the complaint argues that Wheeler should have accepted the hearsay statement about what the district attorney said and should have accepted that supposed legal opinion as

accurate. But no allegations suggest that Wheeler entertained doubts about his view of the machines' legality.

Nor would the district attorney's legal opinion have been necessary to the magistrates' own decision whether probable cause existed. Probable cause to issue a warrant is determined by "a judicial officer, not by a policeman or Government enforcement agent." *Johnson v. United States*, 333 U.S. 10, 14 (1948). Texas follows a similar approach, in which probable cause is decided "by a neutral and detached magistrate," not an "officer engaged in the often competitive enterprise of ferreting out crime." *Sharp v. State*, 677 S.W.2d 513, 517 (Tex. Crim. App. 1984) (en banc) (cleaned up); *see also* Tex. Code Crim. Proc. art. 2.09 (West 2019) (listing the persons authorized to issue warrants as magistrates). A prosecutor's opinion whether certain acts are within a criminal statute has no legal effect on a magistrate's determination of that question. *Cf. United States v. Pace*, 898 F.2d 1218, 1233 (7th Cir. 1990) ("[T]he important questions for Fourth Amendment purposes are whether the warrant application shows probable cause and whether the issuing magistrate is truly 'detached and neutral,' not whether another magistrate had found the same showing deficient."). If another *judge's* probable-cause determination is not so critical as to require disclosure under the Fourth Amendment, a *prosecutor's* opinion is even less material. *See id.*

This case is not comparable, for example, to a situation where an investigating officer failed to disclose that a person punished for selling liquor without a permit in fact possessed a permit. There, the possession of the liquor permit would make the activity legal. By contrast, the district attorney's opinion does not confer any legal authority for the machines to operate. Texas law does not provide law-enforcement officers such authority. *See United States v. Davis*, 690 F.3d 330, 341 (5th Cir. 2012) (denouncing a defendant's reliance on an attorney's opinion of the legality of a gambling machine).

Moreover, plaintiff cites no cases in which the Fifth Circuit found an omission from a warrant so critical as to trigger a presumption of recklessness. Only two cases may qualify. *See Hale v. Fish*, 899 F.2d 390, 400 (5th Cir. 1990) (finding that an affidavit omitted two "clearly critical" facts negating probable cause for an arrest: (1) that all witnesses interviewed, with the exception of the alleged victim, believed that the alleged kidnapping victim was not being held against his will, and (2) that a number of witnesses interviewed believed that the alleged kidnapping was done pursuant to an ongoing FBI investigation*); Jones v. City of Grand Prairie, Tex.*, 209 F.3d 719 (Table), at *3 (5th Cir. 2000) (finding that the omitted fact that a victim described the perpetrator as being of a different race than the arrestee was "clearly critical"). The omitted facts in both cases surpass the degree of materiality present here.

While perhaps relevant for any persuasive effect, the district attorney's evaluation of the machines' legality was not clearly critical to the magistrates' finding of probable cause. *See Davis v. City of Andrews*, No. 20-50951, slip op. at 3 (5th Cir. June 15, 2021) (observing the absence of authority for the proposition "that a complainant's desires affect the probable cause analysis"). So, any omission of further details about the district attorney's evaluation does not support a finding of recklessness as to support a *Franks* violation.

The remaining alleged falsehoods and omissions are semantic in nature or are misstatements that would not have formed the basis for the magistrates' probable-cause determination. *See*, *e.g.*, Doc. 9 ¶¶ 17(B) (complaining that the affidavit labeled Skill Games USA a "criminal organization"), 17(C) (complaining that the affidavit misrepresented that plaintiff stated that he was a former District Attorney), 17(D) (complaining that the affidavit claims that plaintiff was running an "organized crime organization" and that he included irrelevant information about the plaintiff's use of slang preferred by criminals). These representations are generally conclusory

statements rather than facts. They could not have formed the basis for the magistrates' probable cause findings.

Wheeler's affidavit documents an extended investigation into the gaming operations in question. It relies on multiple confidential informants and undercover law enforcement personnel wearing body-camera devices that recorded specific instances of allegedly illegal gaming activity. *See, e.g.*, Doc. 23 at 32, 34. Plaintiff's complaint does not contest that these actions occurred, and plaintiff's involvement is well documented in the affidavit. *See, e.g., id.* at 5, 17, 19-24, 26-27. It would not be unreasonable for a magistrate to conclude, based on the corrected affidavit, that probable cause existed for an arrest and search. As a result, plaintiff fails to state a claim against Wheeler under § 1983. This claim is dismissed.

*Claims Against Sheriff Corbett, Chief Deputy Bates, and Captain Timothy Scharfenberg*

Plaintiff's amended complaint also lodges claims under § 1983 against Wheeler's supervisors, premised upon liability for the alleged constitutional violations of Wheeler. *See* Doc. 9 ¶¶ 31, 34, 36 (asserting claims for a civil conspiracy to violate constitutional rights, defendants' failure to supervise detective Wheeler, and directing Wheeler to include the alleged false statements in his affidavit). Each theory, however, depends on Wheeler having violated the Fourth Amendment. *See Breaux v. City of Garland*, 205 F.3d 150, 161 (5th Cir. 2000) (holding that to prevail against a supervisor under § 1983, the plaintiff must show that the supervisor's conduct directly caused a constitutional violation).

Because Wheeler's alleged actions did not violate plaintiff's Fourth Amendment rights, his supervisors are not liable under any theory in the amended complaint. Accordingly, plaintiff's claims against defendants Corbett, Bates, and Sharfenberg are dismissed.

Because the court holds that plaintiff fails to state a claim under § 1983 against any defendant, discussion of the individual defendants' qualified immunity defense is unnecessary.

*Claims Against Van Zandt County*

Finally, plaintiff's amended complaint asserts claims under § 1983 against Van Zandt County. "In order to bring a section 1983 claim for municipal liability, a plaintiff must allege a constitutional violation resulting from a municipal custom or policy." *Travis v. City of Grand Prarie, Tex.*, 654 Fed. App'x 161, 165 (5th Cir. 2016) (per curiam) (quoting *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690-94 (1978)). Plaintiff fails to establish an underlying constitutional violation, so his claim against the county fails. Moreover, plaintiff does not identify additional instances of similar conduct and thus fails to plausibly allege that the county maintained a policy of violating the Fourth Amendment. *See Pineda v. City of Hous.*, 291 F.3d 325, 329 (5th Cir. 2002) ("One act itself is not a custom."). This claim is dismissed.

## Conclusion

For the reasons set forth above, defendants' motion to dismiss the amended complaint (Doc. 14) is granted.

*So ordered by the court on June 21, 2021.*

J. CAMPBELL BARKER
United States District Judge